IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATHAN SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-469 |
| | § | |
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the court[1] are Defendants Ronald Walker, Terry Carroll, and Walker, Keeling & Carroll, L.L.P.'s (collectively, "Defendants WKC") Motion to Dismiss (Doc. 109); Defendants Morgan Dunn O'Connor, Morgan Dunn O'Connor GST Non-Exempt Trust, Brien O'Connor Dunn GST Non-Exempt Trust, The Estate of Marie O'Connor Sorenson, and the Dunn O'Connor Family Trust (collectively, "Defendants O'Connor") and WKC's Motion for Summary Judgment (Doc. 132), Defendants O'Connor and WKC's Motion for a Pre-Suit Injunction (Doc. 133), Defendants O'Connor and WKC's Amended Motion for Summary Judgment (Doc. 159), and Defendants O'Connor and WKC's Supplemental Motion for a Pre-Suit Injunction (Doc. 160); Defendants O'Connor's Motion for a More Definite Statement (Doc. 195); and Defendants Jeffrey Hart, J. Bruce Bennett, and the Law Office of Cardwell, Hart and Bennett, L.L.P.'s (collectively, "Defendant State's Counsel") Motion to Dismiss (Doc. 138); and Defendants Richard Schwartz and

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 125.

the Law Office of Schwartz, Junnell, Greenberg and Oathout's (collectively, "Schwartz Defendants") Motion for a Pre-Filing Injunction (Doc. 184).

Also pending before the court are Plaintiff's Motion for Default Against Defendant State's Counsel (Doc. 127), Plaintiff's Motion for Default Against Defendants O'Connor and WKC (Doc. 168), Plaintiff's Motion for Partial Summary Judgment Against Defendants O'Connor, WKC, and State's Counsel (Doc. 177), Plaintiff's Motion for Partial Summary Judgment Against Defendants O'Connor (Doc. 180), and Plaintiff's Motion for Leave to File Additional Summary Judgment Evidence (Doc. 191).

The court has considered the motions, the responses thereto, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants WKC's Motion to Dismiss be **DENIED AS MOOT**; that Defendants O'Connor and WKC's Motion for Summary Judgment be **GRANTED**, that Defendants O'Connor and WKC's Motion for a Pre-Suit Injunction be **GRANTED**, that Defendants O'Connor and WKC's Amended Motion for Summary Judgment be **GRANTED**, that Defendants O'Connor and WKC's Supplemental Motion for a Pre-Suit Injunction be **GRANTED**; that Defendants O'Connor's Motion for a More Definite Statement be **DENIED AS MOOT**; that Defendant State's Counsel's Motion to Dismiss be **GRANTED**; and that the Schwartz Defendants' Motion for a Pre-Filing Injunction be **GRANTED**.

The court further **RECOMMENDS** that Plaintiff's Motion for

Default Against Defendant State's Counsel be **DENIED**, that Plaintiff's Motion for Default Against Defendants O'Connor and WKC be **DENIED**, that Plaintiff's Motion for Partial Summary Judgment Against Defendants O'Connor, WKC, and State's Counsel be **DENIED AS MOOT**, that Plaintiff's Motion for Partial Summary Judgment Against Defendants O'Connor be **DENIED AS MOOT**, and that Plaintiff's Motion for Leave to File Additional Summary Judgment Evidence be **DENIED AS MOOT**.

## I. Case Background

**A. 2007 Prior Action**

In 2007, Plaintiff retained the Schwartz Defendants to represent him in his efforts to obtain rights of ownership to, or the right to salvage treasure from, the remnants of a ship lost during the 1820s.[2] Plaintiff and the Schwartz Defendants entered into a contingency agreement, the provisions of which hinged on the Schwartz Defendants' obtaining a judgment in favor of Plaintiff, a settlement agreement, or a right to salvage.[3] In March 2007, Plaintiff filed an in rem admiralty action in this district, seeking title to the lost treasure ship, which he claimed was located somewhere within a 600-square-foot area between Mission River and Melon Lake in Refugio County, Texas. See Smith v. The Abandoned

---

[2] See Doc. 1, Pl.'s Orig. Compl., p. 10.

[3] See id. at p. 11.

<u>Vessel</u>, 610 F. Supp. 2d 739, 742, 744 (S.D. Tex. 2007).  Marie Sorenson ("Sorenson"), the owner of the land under which the shipwreck allegedly rested, intervened in the action, challenging the existence of the treasure ship.[4]  <u>Id.</u> at 743.

On December 29, 2008, a two-day trial was held on the merits of the parties' positions.  <u>Id.</u> at 742.  Four months later, on April 27, 2009, the court issued its findings of fact and conclusions of law.  <u>See generally</u> <u>id.</u>  The court first determined that it had admiralty jurisdiction over the cause of action and that Sorenson had standing to contest Plaintiff's claims.  <u>See</u> <u>id.</u> at 752-53.  It then determined that, based on the evidence at trial, Plaintiff had failed to "prove[ ] that he has discovered an abandoned shipwreck and ha[d] certainly not reduced anything from his discovery to his possession."  <u>Id.</u> at 756.  The court thus found, as a matter of law, that Plaintiff was "not entitled to a declaration of right to title to any alleged abandoned vessel under the law of finds."  <u>Id.</u> at 756.

Continuing its analysis, the court considered whether Plaintiff was entitled to a salvage award and an exclusive right to salvage the alleged shipwreck under the law of salvage.  <u>See</u> <u>id.</u> at 756-58.  Given the evidence produced at the trial, the court determined that Smith had failed to show that his voluntary efforts

---

[4]    Marie Sorenson died during the pendency of the 2007 action. <u>Smith</u>, 610 F. Supp. 2d at n.4.  Defendant Morgan Dunn O'Connor, the executor of Defendant Estate of Marie Sorenson, was substituted in the action.  <u>Id.</u>

to salvage had, "in any way, contributed to any successful salvage of lost or abandoned property."[5]  Id. at 758.  Therefore, the court concluded, Smith was not entitled to a salvage award.  Id.  Based on these findings, the case was dismissed and a final judgment was entered against Plaintiff.

**B.  2010 Prior Action**

On or about March 8, 2010, Defendant Morgan Dunn O'Connor ("Ms. O'Connor"),[6] as the independent executor of Defendant Estate of Marie Sorenson, filed an application in state court for a temporary restraining order, a temporary injunction, and a permanent injunction prohibiting Plaintiff from trespassing on her property, which included the area where Plaintiff claimed the abandoned ship of his 2007 action was located.  See O'Connor v. Smith, No. C-10-77, 2010 WL 4366914, at *1 (S.D. Tex. Oct. 28, 2010).  Ms. O'Connor's complaint arose from Plaintiff's trespasses on her land in 2005-2006

---

[5]     The court also noted that "to maintain an action to exclude all others from salvaging the property, the petitioner must demonstrate the 'intention and capacity to save the property involved.'" Id. at 757 (quoting Hener v. United States, 525 F.Supp. 350, 357 (S.D.N.Y. 1981)).  The court did not reach the question of Plaintiff's intent and capacity to salvage because it found that Plaintiff "failed to demonstrate that he ever has successfully salvaged anything." Id. at n. 15.

[6]     Texas General Land Office was an intervenor plaintiff in the 2010 action and also filed a motion for summary judgment to obtain a permanent injunction against Plaintiff.  See Doc. 17 to Case No. 2:10-cv-77, Or. Granting Mot. to Intervene; Doc. 31 to Case No. 2:10-cv-77, Texas General Land Office's Mot. for Summ. J.  For purposes of convenience, the court considers the summary judgment motions for a permanent injunction as a single motion. Further, Defendant Brien O'Connor Dunn GST Non-Exempt Trust was later substituted as the plaintiff in the 2010 action, upon Ms. O'Connor's transfer of the property to the appropriate beneficiary of the estate.  See Doc. 36 to Case No. 2:10-cv-77, Mot. to Substitute Party Pl.  For the sake of convenience, the court will refer to Ms. O'Connor in addressing the arguments raised in the 2010 action.

and in 2009 as he searched for buried treasure.  See id.  Ms.
O'Connor effected service of process by serving Plaintiff's legal
representative in the 2007 action, the Schwartz Defendants, whom
Plaintiff alleges accepted service of process on Plaintiff's behalf
without first contacting Plaintiff.[7]

The case was removed from state court to the Corpus Christi
Division of this district, and, after a hearing, the court issued
a preliminary injunction enjoining Plaintiff from entering Ms.
O'Connor's property or boring holes in Melon Lake.  See id.  Ms.
O'Connor subsequently moved for summary judgment on her request for
a permanent injunction.  See id. at *2.  In answering the complaint,
Plaintiff asserted that he was entitled to ownership or salvage
rights of the abandoned shipwreck allegedly located on Ms.
O'Connor's property and counterclaimed for damages resulting from
the wrongful issuance of a preliminary injunction.[8]

Considering the merits of Ms. O'Connor's motion for summary
judgment and Plaintiff's responses, the court determined that
Plaintiff's claim that an abandoned vessel was located on Ms.
O'Connor's property was "suspect at best," and, even assuming the
vessel's existence, Plaintiff had failed to establish any right to
excavate it.  Id. at *3-4.  In reaching this conclusion, the court
noted that it was undisputed that the area at issue was owned by

---

[7]     See Doc. 1, Pl.'s Orig. Compl., p. 11.

[8]     See Doc. 15 to Case No. 2:10-cv-77, Pl.'s Ans. to Compl.

either Ms. O'Connor or the State of Texas.  See id. at *4.  The court then proceeded to analyze why Plaintiff was not entitled to excavate the alleged shipwreck under either of those scenarios.  See id. at *4-6.

The court found that if the State of Texas owned the area under which the alleged shipwreck was located, Plaintiff could not excavate unless he obtained the State's consent.  Id. at *5. Plaintiff produced two pieces of evidence to establish the State's consent to excavate: (1) an application submitted to the Texas Historical Commission for a permit to conduct an archeological investigation; and (2) a U.S. Army Corps of Engineers permit.  See id.  The court found that Plaintiff's reliance on an application to the Texas Historical Commission was improper because the application was never approved and no permit was issued.  Id.

Similarly, Plaintiff's contention that the U.S. Army Corps of Engineers permit was evidence that the State had given Plaintiff consent to excavate was rejected by the court as without merit.  See id.  Given that an individual was required to attest to his right of possession to excavate the relevant property by signing an application for a permit from the U.S. Army Corps of Engineers, the court found that Plaintiff had no right to sign the application because he had no legal right to excavate the alleged shipwreck, as established by the holding in Smith v. The Abandoned Vessel, discussed above.  See O'Connor, 2010 WL 4366914, at *5-6.  The court

7

therefore held that, "if the land underlying Melon Lake belongs to the State of Texas, [Plaintiff] has no right to trespass on that land and salvage an alleged shipwreck." Id. at *6.

The court then turned to consider the issues assuming that Ms. O'Connor owned the area at issue. See id. Whether Ms. O'Connor owned the area at issue hinged on whether the "land underlying Melon Lake [was] under navigable waters." Id. Because the parties did not dispute that Ms. O'Connor never consented to Plaintiff's trespassing on the property, the court determined that, if Ms. O'Connor owned the area at issue, Plaintiff would not have any right to salvage the alleged shipwreck. See id. The court thus concluded that Plaintiff failed "to show he has any right to excavate an abandoned shipwreck on someone else's property. [Plaintiff] has no cognizable possessory interest in the land in and around Melon Lake." Id.

Further determining that Plaintiff expressly intended to salvage the alleged shipwreck without authorization from the owner, a substantial threat of irreparable harm to the property existed, the threatened injury if an injunction were not granted outweighed the potential damage of granting said injunction, and a permanent injunction would not disserve the public interest, the court held that a permanent injunction against Plaintiff's entering the area

at issue was appropriate.[9]  See id. at *7-8.  The court accordingly granted summary judgment in favor of Ms. O'Connor and the State of Texas, and permanently enjoined Plaintiff from entering onto the property at issue, as well as from "boring, digging, excavating, or otherwise disturbing the submerged lands underlying Melon Lake or from removing soil or other materials embedded within those submerged lands," unless he obtained permission to do so by the owner of the property.  Id. at *11.  The court's ruling was affirmed by the Fifth Circuit.  O'Connor v. Smith, 427 Fed. App'x 359 (5th Cir. 2011).

On June 27, 2012, Plaintiff moved to vacate the court's judgment on the grounds of new evidence showing that Ms. O'Connor did not own the property at issue.[10]  The motion was denied two weeks later, on July 10, 2012.[11]

## C.  Current Action

Plaintiff, proceeding pro se, filed a seventy-one page, single-spaced complaint in the Central District of California on August 24, 2011.[12]  During the time that the action was before the Central District of California, Defendant State's Counsel filed a

---

[9]     The court denied Plaintiff's motion to stay the court's ruling on the summary judgment motion because Plaintiff did not establish that further discovery would likely result in a genuine issue of material fact.  See O'Connor, 2010 WL 4366914, at *9.

[10]    See Doc. 82 to Case No. 2:10-cv-77, Pl.'s Mot. to Vacate.

[11]    See Doc. 84 to Case No. 2:10-cv-77, Or. Dated July 10, 2012.

[12]    See Doc. 1, Pl.'s Orig. Compl.

9

motion to dismiss Plaintiff's complaint or alternative motion to transfer the action.[13]   The case was transferred to this court on February 16, 2012.[14]

Plaintiff's repetitive and disjointed complaint appears to allege the following causes of action against the various Defendants: legal malpractice, negligence, fraud, breach of fiduciary relationship, intentional and negligent misrepresentation, violations of the rules of professional conduct, breach of contract, breach of warranties, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), unjust enrichment, barratry, tortious interference with contract, conversion, "reckless and wanton conduct," constitutional violations pursuant to 42 U.S.C. § 1983 ("Section 1983"), "outrageous conduct," unlawful application of the permitting process, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.[15]   It appears from the complaint that

---

[13]   See Doc. 94, Def. State's Counsel's Mot. to Dismiss or Alt. Mot. to Transfer.

[14]   See Doc. 98, Case Transfer; see also Doc. 96, Or. From C.D. Cal. Granting Transfer of Venue; Doc. 97, Or. From C.D. Cal. Granting Transfer of Venue.

[15]   See Doc. 1, Pl.'s Orig. Compl., pp. 6, 9, 45-66. Plaintiff's claims of constitutional violations under § 1983 for failing to implement appropriate policies, customs, and practices, and unlawful application of the permitting process are alleged only against the State of Texas, Jerry Patterson, and/or Texas Coastal Coordination Council.  See id. at pp. 62-65. Plaintiff also alleged negligence against the abovementioned parties.  See id. at p. 65.  As none of these three parties appear to have been served in this action, these claims are not properly before the court.

Plaintiff's claims of legal malpractice, breach of fiduciary relationship, violations of the rules of professional conduct, breach of warranties, and breach of the implied covenant of good faith and fair dealing are alleged only against the Schwartz Defendants.[16]

As the court understands the complaint, the crux of Plaintiff's causes of action arise from an alleged conspiracy by the named Defendants that was intended to deprive Plaintiff of "the treasure and the vessel's content that was located on a historic vessel found by Plaintiff."[17]  He claims that Defendants "stole the treasure and the contents of the vessel and destroyed the vessel site."[18]  Plaintiff seeks to recover damages in the amount of $13,000,000,000 for "the lost treasure, the vessel contents, the lost business opportunities, violation of Plaintiff's rights, the right to excavate the vessel, the movie opportunity, lost [sic] of potential investors, and numerous other revenue[] streams that would have been generated from the excavation of the vessel."[19]

---

[16]   Plaintiff expressly states that he "demands judgment" on these claims against the Schwartz Defendants and their malpractice insurance provider, upon which service has not been effected.  See id. at pp. 47-50. Babe Schwartz and Ruth Karper are also identified as defendants in these causes of action, as well as their malpractice insurance providers.  However, the record shows that Plaintiff has not properly served any of these parties. See, e.g., Doc. 33, C.D. Cal. Min. Or. Dismissing Pl.'s Orig. Compl. as to Babe Schwartz;  Doc. 72, C.D. Cal. Min. Or. Granting Ruth Karper's Mot. to Set Aside Default J., pp. 4-6 (finding that Ruth Karper was not properly served).

[17]   Doc. 1, Pl.'s Orig. Compl., p. 6; see also id. at pp. 9, 12, 16.

[18]   See id. at p. 12.

[19]   Doc. 1, Pl.'s Orig. Compl., p. 66.

Specifically, Plaintiff claims that he entered into a contingency agreement and retained the Schwartz Defendants to represent him in the 2007 action <u>Smith v. The Abandoned Vessel</u>, discussed above.[20]   According to Plaintiff, the contingency agreement did not cover any other matters aside from the 2007 action unless Plaintiff and the Schwartz Defendants agreed, in writing, to include additional matters.[21]   Upon the dismissal of the 2007 action, Plaintiff received an email from the Schwartz Defendants informing him that the case was dismissed and no further matters were pending.[22]   In 2010, however, Plaintiff claims that the Schwartz Defendants accepted service on Plaintiff's behalf and represented Plaintiff in <u>O'Connor v. Smith</u>, discussed above, without Plaintiff's consent or agreement.[23]   Plaintiff also alleges that the Schwartz Defendants lied to him about the date they accepted service in the 2010 action, as well as about the contingency agreement covering the matters at issue in that action.[24]

Plaintiff also claims that the Schwartz Defendants tricked Plaintiff into believing that the 2010 action was the same as, or an extension of, the 2007 action by sending Plaintiff invoices

---

[20]   <u>See id</u>. at p. 11.

[21]   <u>See id.</u>

[22]   <u>See id</u>.

[23]   <u>See id.</u> at p. 11.

[24]   <u>See id.</u> at p. 39.

referencing the <u>Smith v. The Abandoned Vessel</u>, instead of the 2010 action.[25]   Plaintiff was also informed by the Schwartz Defendants that he owed millions of dollars pursuant to the Schwartz Defendants' obtaining an interest not only in Plaintiff's properties, but also in a portion of the alleged shipwreck's treasure.[26]   Plaintiff alleges that Defendants WKC knew that the Schwartz Defendants were not authorized to represent Plaintiff in the 2010 action, but nonetheless colluded with the Schwartz Defendants to serve "bogus documents" in the name of a "fictitious person, created by the defendants."[27]   As a result of alleged fraudulent documents in the 2010 action, including a "bogus Temporary Restraining Order,"[28] Plaintiff contends, a permanent injunction was issued against him, which allowed Defendants to "steal the treasure and the contents of the vessel while destroying

---

[25]   <u>See</u> <u>id.</u>

[26]   <u>See</u> <u>id.</u> at p. 11.  The complaint is unclear to which properties Plaintiff is referring.  <u>See</u> <u>id.</u>  The court notes that the holding in <u>Smith</u> established that Plaintiff did not have a property interest in the alleged shipwreck located in the land underlying Melon Lake.  <u>See generally</u> <u>Smith</u>, 610 F. Supp. 2d 739.

[27]   Doc. 1, Pl.'s Orig. Compl., p. 14; <u>see</u> <u>id.</u> at p. 38.  It appears from Plaintiff's complaint that the alleged fictitious person under whose name "bogus documents" were filed in the 2010 action is Morgan Dunn O'Connor, Jr. The court record for <u>O'Connor v. Smith</u> does not show the involvement of any party going by the name Morgan Dunn O'Connor, Jr.  <u>See generally</u> Doc. 1 to Case No. 2:10-cv-77, Ex. A-2 to Notice of Removal, Orig. Application for Temp. Restraining Order, Temp. Inj. and Permanent Inj.  The lawsuit was filed by Morgan Dunn O'Connor, who was later replaced by the Brien O'Connor Dunn GST Non-Exempt Trust.  <u>See</u> <u>id.</u>; Doc. 36 to Case No. 2:10-cv-77, Mot. to Substitute Party Pl.

[28]   <u>See</u> Doc. 1, Pl.'s Orig. Compl., p. 42.

a Historic Site in the process."[29]

Plaintiff also summarily alleges that Ms. O'Connor not only allowed her counsel to defraud Plaintiff, but also bribed Commissioner Jerry Patterson to improperly intervene in the 2010 action and seek a permanent injunction on behalf of the State of Texas.[30] Plaintiff conclusorily asserts that the remaining Defendants O'Connor colluded with other named Defendants to defraud him, either by letting their attorneys file the 2010 action on their behalf or by claiming ownership of the site on which the alleged shipwreck is located.[31]

On February 28, 2012, Defendants O'Connor filed a motion to dismiss Plaintiff's complaint for improper service; the motion was later denied.[32] Defendants WKC filed the pending motion to dismiss Plaintiff's complaint six days later, on March 6, 2012.[33] About one month later, on April 4, 2012, Plaintiff filed the pending motion for default judgment against Defendant State's Counsel.[34] On April

---

[29]    See id. at p. 16.

[30]    See id. at p. 31.

[31]    See id. at pp. 32-33.

[32]    See Doc. 102, Defs. O'Connor's Mot. to Dismiss; see also Doc. 179, Mem. & Recommendation Dated Aug. 15, 2012; Doc. 193, Or. Dated Sep. 14, 2012.

[33]    See Doc. 109, Def. WKC's Mot. to Dismiss; see also Doc. 123, Pl.'s Notice of Opp'n to Def.'s WKC's Mot. to Dismiss; Doc. 124, Pl.'s Resp. to Def. WKC's Mot. to Dismiss.

[34]    See Doc. 127, Pl.'s Mot. for Default J. Against Def. State's Counsel; see also Doc. 136, Def. State Counsel's Resp. in Opp'n to Pl.'s Mot. for Default J.

20, 2012, Defendants O'Connor and WKC filed the pending motion for summary judgment and a motion for a pre-filing injunction.[35] Defendant State's Counsel filed the pending motion to dismiss Plaintiff's complaint about two weeks later, on May 2, 2012.[36]

On May 21, 2012, the court held a hearing at which Plaintiff discussed several of the claims alleged in his complaint.[37]  At the hearing, the court instructed Plaintiff to file an amended complaint specifying which claims were being alleged against each defendant and supporting each claim with specific facts, not unsubstantiated and rambling theories.[38]  The court further stated that Plaintiff was not to add any new defendants to the lawsuit.[39]  Plaintiff's amended complaint failed to comply with the court's orders and was subsequently stricken from the record.[40]

On August 3, 2012, Plaintiff filed the pending motion for partial summary judgment against Defendants O'Connor, WKC, and

---

[35]    See Doc. 132, Defs O'Connor & WKC's Mot. for Summ. J.; Doc. 133, Defs. O'Connor & WKC's Mot. for Pre-Filing Inj.; see also Doc. 159, Defs. O'Connor & WKC's Am. Mot. for Summ. J.; Doc. 160, Defs. O'Connor & WKC's Supplement Mot. for Pre-Filing Inj.

[36]    See Doc. 138, Def. State Counsel's Mot. to Dismiss.

[37]    See Doc. 158, Tr. of H'rg Dated May 21, 2012.

[38]    See id. at pp. 20, 24

[39]    See id. at p. 28.

[40]    See Doc. 153, Pl.'s 1st Am. Compl.; Doc. 197, Or. Striking Pl.'s 1st Am. Compl.; see also Doc. 155, Defs. O'Connor and WKC's Mot. to Strike Pl.'s 1st Am. Compl.; Doc. 156, Def. State Counsel's Mot. to Strike Pl.'s 1st Am. Compl.; Doc. 157, Schwartz Defendants' Mot. to Strike Pl.'s 1st Am. Compl.

State's Counsel.[41]   Plaintiff filed the second pending motion for partial summary judgment on August 15, 2012.[42]   The next day, the Schwartz Defendants moved for a pre-filing injunction against Plaintiff.[43]   Approximately three weeks later, on September 10, 2012, Plaintiff moved for leave to file additional summary judgment evidence.[44]   Four days later, on September 14, 2012, Defendants O'Connor and WKC filed the pending motion for a more definite statement based on Plaintiff's first amended complaint.[45]

## II. Plaintiff's Motions for Default Judgment

Prior to considering the parties' motions for summary judgment, motions to dismiss, and motions for injunctive relief, the court addresses Plaintiff's motions for default judgment against Defendants State's Counsel, O'Connor, and WKC.

Under the federal rules, an entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is

---

[41]    See Doc. 177, Pl.'s Mot. for Partial Summ. J. Against Defs. O'Connor, WKC, & State's Counsel; see also Doc. 185, Defs. O'Connor & WKC's Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J.; Doc. 188, Def. State's Counsel's Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J.

[42]    See Doc. 180, Pl.'s Mot. for Partial Summ. J. Against Defs. O'Connor & WKC; see also Doc. 189, Defs. O'Connor & WKC's Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J.

[43]    See Doc. 184, Schwartz Defs.' Mot. for Pre-Filing Inj.

[44]    See Doc. 191, Pl.'s Mot. for Leave to File Additional Summ. J. Evid.

[45]    See Doc. 195, Def. O'Connor & WKC's Mot. for More Def. Statement; see also Doc. 196, Pl.'s Resp. in Opp'n to Def. O'Connor's & WKC's Mot. for More Def. Statement.

shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  A default judgment is a drastic remedy and should only be resorted to in extreme situations.  See Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001).

With respect to Defendant State's Counsel, Plaintiff urges the court to enter a judgment of default on the grounds that Defendant State's Counsel failed to file an answer to Plaintiff's complaint. The court finds no support for this claim.  On February 6, 2012, Defendant State's Counsel filed the pending motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief could be granted.  See Fed. R. Civ. P. 12(b)(6).  Such a motion must be filed "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).  If the motion is denied or postponed until trial, the moving party must file a responsive pleading within fourteen days of the court's denial or postponement.  Fed. R. Civ. P. 12(a)(4).  As the court has not ruled on the pending motion of Defendant State's Counsel, Defendant State's Counsel's obligation to file a responsive pleading to Plaintiff's complaint has not been triggered.  Entry of default judgment against Defendant State's Counsel, therefore, is inappropriate.

Plaintiff also requests entry of default judgment against Defendants O'Connor and WKC, contending that Defendants O'Connor and WKC: (1) failed to file a response to Plaintiff's amended complaint, in violation of the Federal Rules of Civil Procedure; and (2)

17

"willfully and intentionally disobeyed the Court's order that they file an Amended Dispositive Motion[] to Plaintiff's First Amended Complaint."[46]   The court finds Plaintiff's arguments to be without merit.

At the hearing held on May 21, 2012, the court addressed Defendants WKC's concern with respect to filing responses to Plaintiff's proposed amended complaint:

> [Defendants WKC]:  . . . I know under the federal rule, if [Plaintiff] amends his pleadings, filing a response to those pleadings was a little difficult. We need to file a new answer as well. . . .
>
> The Court:   Your motion to dismiss has, in my view, obviated the need for an answer at this point.  Once I get it all sorted out on what the causes of action are, then I will require you to file a--if you need to, if you haven't filed an answer. . . .
>
> [Defendants WKC]:  . . . And now there have been some motions for entry of default, so I'm being very careful about that.  So I'm clear, we'll have 21 days.  We don't need to refile a new answer in response to the new pleadings, if that's fine.
>
> The Court:   If you are here and participating in this lawsuit, you will not be defaulted.[47]

The court also expressly stated that if Defendants wanted to file any supplementary motions, they had twenty-one days after Plaintiff filed his amended pleading to file said supplements.[48]   Defendants O'Connor and WKC then filed an amended summary judgment motion, in

---

[46]   See Doc. 167, Pl.'s Mot. for Default J. Against Defs. O'Connor & WKC, p. 7.

[47]   Doc. 158, Tr. from May 21, 2012 H'rg, p. 27.

[48]   Id. at p. 26.

which they raised the same arguments as in their original motion for summary judgment.   Subsequently, the court struck Plaintiff's amended complaint for failing to comply with the court's orders.

Given the evidence above, the court finds no basis for Plaintiff's claims that Defendants State's Counsel, O'Connor, and WKC did not "plead or otherwise defend" the action.   Accordingly, the court **RECOMMENDS** that Plaintiff's motion for default judgment against Defendant State's Counsel be **DENIED** and that Plaintiff's motion for default judgment against Defendants O'Connor and WKC be **DENIED.**

### III. Motions for Summary Judgment

The court next considers the pending motions for summary judgment.   In their motion,[49] Defendants O'Connor and WKC contend that Plaintiff is precluded from asserting his claims under the doctrines of collateral estoppel and res judicata, as well as pursuant to the litigation privilege.   Plaintiff also moves for summary judgment against Defendants O'Connor and WKC on his claim for breach of contract.[50]   The court considers the merits of the

---

[49]   Defendants O'Connor and WKC also filed an amended motion for summary judgment in response to Plaintiff's amended complaint.   <u>See</u> Doc. 159, Defs. O'Connor and WKC's Am. Mot. for Summ. J.   Because the arguments in both motions are virtually identical, the court considers them as a single motion for summary judgment.

[50]   In his response to Defendants O'Connor and WKC's motion, Plaintiff for the first time claims that Defendants' conduct was directed at Plaintiff because of Plaintiff's race.   Not only has Plaintiff failed to plead a cause of action based on his race, but Plaintiff does not allege any facts in his response to support such a claim.

parties' arguments.

## A. __Legal Standard__

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response

to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S.

at 322.

**B.  Analysis**

The doctrine of collateral estoppel, or issue preclusion, bars the litigation of an issue that has been raised and litigated in a previous lawsuit. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 572 (5th Cir. 2005). The following elements must be satisfied in order to preclude an issue under principles of collateral estoppel: "(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." Id. at 572. Collateral estoppel may apply "even if the claims and subject matter of the suits differ." Limon v. Berryco Barge Lines, L.L.C., 779 F. Supp. 2d 577, 583 (S.D. Tex. 2011) (citing Next Level Commc'ns LP v. DSC Commc'ns Corp., 179 F.3d 244, 250 (5th Cir. 1999)). Further, collateral estoppel does not require complete identity of the parties, though the party against whom collateral estoppel is being asserted must have been a party, or in privity with a party, in the prior lawsuit. Vines v. Univ. of La. at Monroe, 398 F.3d 700, 705 (5th Cir. 2005); Limon, 779 F. Supp. 2d at 583.

Here, Plaintiff's claims against Defendants O'Connor and WKC, and the injury resulting therefrom, are contingent upon the premise that Plaintiff had an ownership interest in the alleged vessel

located in the land underlying Melon Lake.  The issue underlying this premise—whether Plaintiff has any claim to the alleged vessel or its contents—has been litigated in both the 2007 action, <u>Smith v. The Abandoned Vessel</u>, and the 2010 action, <u>O'Connor v. Smith</u>. In the former, the court held that Plaintiff had failed to prove that a shipwreck existed in the land underlying Melon Lake and was therefore "not entitled to a declaration of right to title to any alleged abandoned vessel under the law of finds." <u>Smith</u>, F. Supp. 2d at 756.  It further held that Plaintiff had failed to establish that he was entitled to salvage the alleged shipwreck pursuant to the law of salvage.  <u>See</u> <u>id.</u> at 758.

In considering whether to issue a permanent injunction against Plaintiff in the 2010 action, the court determined that, even assuming the existence of the alleged shipwreck, Plaintiff had failed to establish any right to excavate it, regardless of whether the land at issue was owned by the State of Texas or by Ms. O'Connor. <u>See</u> <u>O'Connor</u>, 2010 WL 4366914, at *3-4. Considering the evidence produced by Plaintiff in support of his claim that he had consent to excavate, the court found that Plaintiff did not have such consent from either Ms. O'Connor or the State of Texas.  <u>See</u> <u>id.</u>

Given that the issue of Plaintiff's ownership interest in the alleged shipwreck has been adjudicated in two separate lawsuits, the court finds that any claim grounded in the theory that Plaintiff had

an ownership interest in the alleged shipwreck is precluded as a matter of law under the doctrine of collateral estoppel. Specifically, Plaintiff's claims of fraud, intentional and negligent misrepresentation, breach of contract, violations of RICO, tortious interference with contract, unjust enrichment, conversion, and violations of Section 1983, all of which Plaintiff claims resulted in his losing the income that he would have earned from his excavation of the alleged shipwreck, are precluded against all existing Defendants except the Schwartz Defendants.[51]

The court construes the above claims as collateral attacks on the final judgments of the 2007 and 2010 actions. Although Plaintiff is not seeking an outright determination that he had an ownership interest in the alleged vessel, his claims amount to a collateral attack on prior courts' rulings that he did not have an ownership interest in the alleged shipwreck and would require this court to improperly review the prior final judgments. Thus, to the extent Plaintiff alleges that the injunction issued in the 2010 action or the conclusions of the court in the 2007 action were procured by fraud or otherwise, Plaintiff must raise such arguments in those lawsuits.

Having found Defendants O'Connor and WKC's arguments regarding issue preclusion to be dispositive, the court need not address the

---

[51]     The court discusses the claims alleged against the Schwartz Defendants below, under the subheading "Surviving Cause of Action."

24

parties' arguments regarding res judicata and the litigation privilege.  The court thus **RECOMMENDS** that Defendants O'Connor and WKC's motion for summary judgment be **GRANTED**.  In light of this determination, as well as the conclusions reached below regarding the remaining causes of action,[52] Defendants O'Connor and WKC's pending motion for a more definite statement[53] and Defendants WKC's pending motion to dismiss are **MOOT**.

Further, because the grounds for Plaintiff's motions for partial summary judgment against Defendants O'Connor, WKC, and State's Counsel rely on the premise that the alleged shipwreck and its contents belong to Plaintiff,[54] which is precluded from this action under the doctrine of collateral estoppel, Plaintiff's motions for partial summary judgment should be **DENIED AS MOOT**.[55]

---

[52]    Below, the court discusses Plaintiff's causes of actions against all Defendants for barratry, NIED, "outrageous conduct," and "reckless and wanton conduct" in the context of Defendant State's Counsel's motion to dismiss.

[53]    The court notes that Defendants O'Connor and WKC's motion for a more definite statement is also moot given the court's order striking Plaintiff's amended complaint.  See Doc. 197, Or. Dated Oct. 9, 2012.

[54]    See, e.g., Doc. 177, Pl.'s Mot. for Partial Summ. J. Against Defs. O'Connor, WKC, and State's Counsel, pp. 15-16, 18.

[55]    The court notes that even if Plaintiff's breach of contract claims were not collaterally estopped, Plaintiff would not be entitled to summary judgment against Defendant's O'Connor, WKC, and State's Counsel.  Plaintiff's motions for partial summary judgment consist of repetitive statements that the aforementioned Defendants used and disclosed confidential information, trade secrets, and work product produced by Plaintiff pursuant to a confidentiality agreement during the 2007 action, in conjunction with arguments that a distribution deed belonging to Defendants O'Connor is fraudulent.  See generally Doc. 177, Pl.'s Mot. for Partial Summ. J. Against Defs. O'Connor, WKC, and State's Counsel; Doc. 180, Pl.'s Mot. for Partial Summ. J. Against Defs. O'Connor.  Plaintiff has not provided any competent summary judgment evidence in support of his arguments beyond referring generally to the records of proceedings in this  action, as well as the 2007 and 2010 actions.  This is

Plaintiff's motion to file additional summary judgment evidence should also be **DENIED AS MOOT** on the same grounds.

## IV.   Motion to Dismiss

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).  A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  <u>Bell Atl. Corp.</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully."  <u>Iqbal</u>, 129 S.Ct. at 1949.

---

not sufficient to satisfy Plaintiff's summary judgment burden.  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 323.  It is not the court's job to sift through every document produced in this and prior actions to find evidentiary support for Plaintiff's claim.  <u>Cf.</u> <u>Ragas v. Tenn. Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998)(stating that Federal Rule of Civil Procedure 56 does not impose a duty on the court to search the record for evidence to support a party's opposition to summary judgment).

**B.  Analysis**

Defendant State's Counsel moves to dismiss Plaintiff's complaint.  The court addresses those claims alleged against Defendant State's Counsel that have not been precluded pursuant to the doctrine of collateral estoppel, as discussed above: barratry, NIED, "reckless and wanton conduct," and "outrageous conduct."

**1.  Barratry**

Plaintiff appears to allege a cause of action for barratry against all Defendants, including Defendant State's Counsel. Plaintiff's claim for barratry reads as follows:

> Defendant committed several acts of barratry or of a barratrous nature by stirring up baseless, meritless and/or frivolous litigation, suits and quarrels between Plaintiff and others by failing to defend Plaintiff's rights and interests properly, and it was done by Defendants with a corrupt or malicious intent to vex and annoy Plaintiff, in order to obtain an economic benefit for themselves by creating litigation that he believed Plaintiff would have to pay additional retainers to him, and were [sic] Defendant did and would receive additional fees and economic benefit from Plaintiff.[56]

Section 82.0651 of the Texas Government Code ("The Civil Barratry Statute")[57] provides a private right of action for barratry in two

---

[56]     Doc. 1, Pl.'s Orig. Compl., p. 58.

[57]     Section 32.12 of the Texas Penal Code also prohibits barratry. See Tex. Pen. Code Ann. § 32.12.  However, "federal courts have repeatedly held that violations of criminal statutes do not give rise to a private cause of action." Brown v. CitiMortgage, Inc., No. 3-11-CV-1102-K-BD, slip op., 2011 WL 5529811, at *3 (N.D. Tex. Oct. 25, 2011) (quoting Williams v. Cintas Corp., No. 3-07-cv-0561-M, 2007 WL 1295802, at *2 (N.D. Tex. Apr. 10, 2007) (unpublished)) (quotations omitted).  The court therefore assumes that Plaintiff is alleging a claim of barratry under the Civil Barratry Statute.

situations:

> (a) A client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons.
> . . .
>
> (c) A person who was solicited by conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

Tex. Gov't Code Ann. § 82.0651 (a), (c).

It is undisputed that, with the exception of the Schwartz Defendants, Plaintiff did not have a contract for legal services with any of the existing Defendants.  Further, read in the light most favorable to Plaintiff, Plaintiff's complaint alleges no facts from which the court can reasonably construe that any Defendant other than the Schwartz Defendants[58] solicited Plaintiff's business by any means, much less by means violating state law or rules of professional conduct governing barratry.  See Tex. Gov't Code Ann. § 82.0651 (a), (c).  The court therefore **RECOMMENDS** that Plaintiff's cause of action for barratry against all existing Defendants, with the exception of the Schwartz Defendants,[59] be **DISMISSED**.

---

[58]   Plaintiff's complaint alleges that the Schwartz Defendants represented him in the 2010 action by deceiving him into believing that the action was either the same as, or a continuation of, the 2007 action.

[59]   The court considers the claims against the Schwartz Defendants separately under the subheading "Surviving Causes of Action."

### 2. Other Claims

Plaintiff seems to allege claims for NIED, "reckless and wanton conduct," and "outrageous conduct." Texas does not recognize a cause of action for NIED. Phillips v. United Parcel Service, 2011 WL 2680725, at *15 (N.D. Tex. 2011) (citing Hagen v. Hagen, 282 S.W.3d 899, 910 (Tex. 2009)) (unpublished). Moreover, "reckless and wanton conduct" and "outrageous conduct" are not causes of action, regardless of the underlying facts. Thus, to the extent Plaintiff is alleging the abovementioned causes of action, the court **RECOMMENDS** that they be **DISMISSED** as against all Defendants.

### 3. Surviving Cause of Action

If this memorandum and recommendation is adopted, Plaintiff's sole surviving cause of action will be legal malpractice against the Schwartz Defendants. In his complaint, Plaintiff alleges the following causes of action against the Schwartz Defendants: legal malpractice, negligence, fraud, intentional and negligent misrepresentation, breach of fiduciary relationship, breach of contract, breach of warranties, breach of the covenant of good faith and fair dealing, violations of the rules of professional conduct, barratry, violations of RICO, violations of Section 1983, tortious interference with contract, unjust enrichment, and conversion.

In Texas, a "cause of action arising out of bad legal advice or improper representation is legal malpractice." Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.–Houston [1st Dist.] 1998,

pet. denied); <u>see</u> <u>Mendenhall v. Clark</u>, No. 07-11-00213-CV, 2012 WL 512657, at *2 (Tex. App.–Amarillo Feb. 16, 2012) (unpublished)("if the theory of recovery against an attorney sounds in tort, Texas courts are going to treat it as a legal malpractice claim."). A plaintiff may not fracture his legal malpractice claim into separate claims. <u>See</u> <u>Greathouse</u>, 982 S.W.2d at 172. As each of Plaintiff's claims against the Schwartz Defendants arises from their alleged improper or deficient representation of Plaintiff in the 2010 action and their conduct throughout and subsequent to the said representation, the court finds that Plaintiff's claims amount to allegations of legal malpractice.

A legal malpractice claim requires allegations that: "(1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." <u>Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.</u>, 192 S.W.3d 780, 783 (Tex. 2006) (quoting <u>Peeler v. Hughes & Luce</u>, 909 S.W.2d 494, 496 (Tex. 1995)) (quotations omitted). Generally, a two-year statute of limitations applies to claims of legal malpractice; this limitations period begins to run when the plaintiff suffers a legal injury. <u>See</u> Tex. Civ. Prac. & Rem. Code § 16.003(a); <u>Hughes v. Mahaney & Higgins</u>, 821 S.W.2d 154, 156 (Tex. 1991).

Plaintiff may file an amended complaint repleading only the claim of legal malpractice against the Schwartz Defendants.

Plaintiff's amended complaint must consist of a short, plain statement of the specific facts supporting each of the elements for legal malpractice.

### V. Motion for Pre-Filing Injunction

Defendants O'Connor, WKC, and Schwartz move for a pre-filing injunction against Plaintiff. Along with repeatedly attacking the legitimacy of the previous actions, Plaintiff argues, in essence, that the motions for a pre-filing injunction have been filed in bad faith. The court disagrees.

In determining whether to impose a pre-filing injunction, a court must consider the following elements:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

Baum v. Blue Moon Ventures, LLC, 513 F.3d 181, 189 (5th Cir. 2008) (quoting Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 818 (4th Cir. 2004)).

Here, although the present lawsuit is only the second initiated by Plaintiff, Plaintiff has repeatedly exhibited a refusal to accept the judgments of other courts and to adhere to court orders. Specifically, as detailed above, Plaintiff insists on relitigating the same issue in different guises, that is, the ownership of the alleged shipwreck. Moreover, in this lawsuit,

Plaintiff was instructed to pare down his seventy-one page complaint, identify which claims were being alleged against what defendants, and provide factual support for each claim, not unsubstantiated theories. He was also instructed not to add any defendants to the lawsuit. In direct opposition to the court's instructions, Plaintiff filed a 237-page complaint that proposed to add thirteen new defendants to the lawsuit. This conduct militates in favor of finding that Plaintiff is a vexatious litigant.[60]

Regarding the second and third elements, two courts have issued final judgments holding that Plaintiff has no ownership interest or right to the alleged vessel. Yet Plaintiff endeavors to circumvent those judgments by initiating this lawsuit, thus expending the resources of the parties who must defend claims grounded in issues that have already been adjudicated, as well as the resources of the court. Finally, as Plaintiff appears to give little weight to court judgments and orders, imposing alternative sanctions is unlikely to deter Plaintiff.

Accordingly, the court **RECOMMENDS** that Defendants O'Connor,

---

[60]     In further support for a pre-filing injunction, the Schwartz Defendants submitted an email sent to the Schwartz Defendants' counsel by Plaintiff, in which Plaintiff states:

> Plaintiff Nathan Smith will not for a moment hesitate to bring legal action against you also if you do not cease and desist immediately from violating the agreement you are bound by. . . . If you would like for a Court to decide whether or not your clients and you are still in violation or have violated Plaintiff's protective order. Then [sic] Plaintiff will gladly accom[mo]date you.

Doc. 184-2, Ex. A to Schwartz Defs.' Mot. for Pre-Filing Inj., Email dated July 25, 2012.

WKC, and Schwartz's motions for a pre-filing injunction be **GRANTED**.
It is hereby **RECOMMENDED** that Plaintiff be enjoined from filing any
lawsuit, motion, complaint, or additional claim arising out of the
alleged shipwreck or the 2007 and 2010 prior actions in the Southern
District of Texas or any other federal court without obtaining leave
from a United States District Judge.  The court further **RECOMMENDS**
that the injunction include a requirement that Plaintiff file an
accompanying Motion for Leave to File Complaint/Motion disclosing
that a pre-filing injunction has been issued against him and
attaching a copy of this Memorandum and Recommendation whenever he
seeks to file a new complaint or motion in this or any other
district.

### VI.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants
WKC's Motion to Dismiss be **DENIED AS MOOT**; that Defendants O'Connor
and WKC's Motion for Summary Judgment be **GRANTED**, that Defendants
O'Connor and WKC's Motion for a Pre-Suit Injunction be **GRANTED**, that
Defendants O'Connor and WKC's Amended Motion for Summary Judgment
be **GRANTED**, that Defendants O'Connor and WKC's Supplemental Motion
for a Pre-Suit Injunction be **GRANTED**; that Defendants O'Connor's
Motion for a More Definite Statement be **DENIED AS MOOT**; that
Defendant State's Counsel's Motion to Dismiss be **GRANTED**; and that
the Schwartz Defendants' Motion for a Pre-Filing Injunction be

**GRANTED.**

The court further **RECOMMENDS** that Plaintiff's Motion for Default Against Defendant State's Counsel be **DENIED**, that Plaintiff's Motion for Default Against Defendants O'Connor and WKC be **DENIED**, that Plaintiff's Motion for Partial Summary Judgment Against Defendants O'Connor, WKC, and State's Counsel be **DENIED AS MOOT**, that Plaintiff's Motion for Partial Summary Judgment Against Defendants O'Connor be **DENIED AS MOOT**, and that Plaintiff's Motion for Leave to File Additional Summary Judgment Evidence be **DENIED AS MOOT.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of October, 2012.

Nancy K. Johnson
United States Magistrate Judge