IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NATHAN SMITH,                     §
                                  §
          Plaintiff,              §
                                  §
v.                                §    CIVIL ACTION NO. H-12-469
                                  §
THE STATE OF TEXAS, et al.,       §
                                  §
          Defendants.             §

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Defendants Richard A. Schwartz ("Schwartz") and Schwartz, Junell, Greenberg & Oathout, LLP's (collectively, "Defendants") Motion for Summary Judgment (Doc. 243) and Plaintiff Nathan Smith's ("Smith") Motion to Strike (Doc. 248) and Partial Motion for Summary Judgment (Doc. 252). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiff's Motion to Strike and **RECOMMENDS** that Defendants' motion be **GRANTED IN PART, DENIED IN PART** and Plaintiff's Partial Motion for Summary Judgment be **DENIED**.

## I.  Case Background[2]

### A.  2007 Action

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 125.

[2]     Much of this section is taken directly from the two memoranda and recommendations previously issued by the court in this case.  See Doc. 198, Mem. & Recommendation Dated Oct. 26, 2012; Doc. 229, Mem. & Recommendation Dated Feb. 6, 2013.

In 2007, Plaintiff retained Defendants to represent him in his efforts to obtain rights of ownership to, or the right to salvage treasure from, the remnants of a ship lost during the 1820s.[3] Plaintiff and Defendants entered into a contingency agreement, the provisions of which hinged on the Defendants' obtaining a judgment in favor of Plaintiff, a settlement agreement, or a right to salvage.[4]  In March 2007, Plaintiff filed an in rem admiralty action in this district, seeking title to the lost treasure ship, which he claimed was located somewhere within a 600-square-foot area between Mission River and Melon Lake in Refugio County, Texas. See Smith v. The Abandoned Vessel, 610 F. Supp. 2d 739, 742, 744 (S.D. Tex. 2007).  Marie Sorenson ("Sorenson"), the owner of the land on which Melon Lake is located, intervened in the action, challenging the existence of the ship.[5]  Id. at 743.

On December 29, 2008, a two-day trial was held.  Id. at 742. Four months later, on April 27, 2009, the court issued its findings of fact and conclusions of law.  See generally id. The court first determined that it had admiralty jurisdiction over the cause of action and that Sorenson had standing to contest Plaintiff's claims.  See id. at 752-53.  It then determined that, based on the

---

[3]     See Doc. 1, Pl.'s Orig. Compl., p. 10.

[4]     See id. at p. 11.

[5]     Marie Sorenson died during the pendency of the 2007 action.  Smith, 610 F. Supp. 2d at n.4.  Defendant Morgan Dunn O'Connor, the executor of Defendant Estate of Marie Sorenson, was substituted in the action.  Id.

evidence at trial, Plaintiff had failed to "prove[ ] that he ha[d] discovered an abandoned shipwreck and ha[d] certainly not reduced anything from his discovery to his possession." Id. at 756.  The court thus found, as a matter of law, that Plaintiff was "not entitled to a declaration of right to title to any alleged abandoned vessel under the law of finds." Id. at 756.

Continuing its analysis, the court considered whether Plaintiff was entitled to a salvage award and an exclusive right to salvage the alleged shipwreck under the law of salvage. See id. at 756-58.  Given the evidence produced at the trial, the court determined that Plaintiff had failed to show that his voluntary efforts to salvage had, "in any way, contributed to any successful salvage of lost or abandoned property." Id. at 758.  Therefore, the court concluded, Plaintiff was not entitled to a salvage award. Id.  Based on these findings, the case was dismissed and a final judgment was entered against Plaintiff.

**B.  2010 Action**

On or about March 8, 2010, Defendant Morgan Dunn O'Connor ("O'Connor"),[6] as the independent executor of Defendant Estate of

---

[6]     Texas General Land Office was an intervenor plaintiff in the 2010 action and also filed a motion for summary judgment to obtain a permanent injunction against Plaintiff. See Doc. 17 to Case No. 2:10-cv-77, Or. Granting Mot. to Intervene; Doc. 31 to Case No. 2:10-cv-77, Texas General Land Office's Mot. for Summ. J.  For purposes of convenience, the court considers the summary judgment motions for a permanent injunction as a single motion.  Further, a different plaintiff was substituted for O'Connor in the 2010 action, upon O'Connor's transfer of the property to the appropriate beneficiary of the estate. See Doc. 36 to Case No. 2:10-cv-77, Mot. to Substitute Party Pl.  For the sake of convenience, the court will refer to O'Connor in addressing the arguments raised in the 2010 action.

Marie Sorenson, filed an application in state court for a temporary restraining order, a temporary injunction, and a permanent injunction prohibiting Plaintiff from trespassing on her property, which included the area where Plaintiff claimed the abandoned ship of his 2007 action was located.  See O'Connor v. Smith, No. C-10-77, 2010 WL 4366914, at *1 (S.D. Tex. Oct. 28, 2010).  O'Connor's complaint arose from Plaintiff's trespasses on her land in 2005-2006 and in 2009 as he searched for buried treasure.  See id.

The case was removed from state court to the Corpus Christi Division of this district, and, after a hearing, the court issued a preliminary injunction enjoining Plaintiff from entering O'Connor's property or boring holes in Melon Lake.  See id. O'Connor subsequently moved for summary judgment on her request for a permanent injunction.  See id. at *2.  In answering the complaint, Plaintiff asserted that he was entitled to ownership or salvage rights of the abandoned shipwreck allegedly located on O'Connor's property and counterclaimed for damages resulting from the wrongful issuance of a preliminary injunction.[7]

Considering the merits of O'Connor's motion for summary judgment and Plaintiff's responses, the court determined that Plaintiff's claim that an abandoned vessel was located on O'Connor's property was "suspect at best," and, even assuming the vessel's existence, Plaintiff had failed to establish any right to

---

[7]    See Doc. 15 to Case No. 2:10-cv-77, Pl.'s Ans. to Compl.

excavate it.  Id. at *3-4.  In reaching this conclusion, the court noted that it was undisputed that the area at issue was owned by either O'Connor or the State of Texas.  See id. at *4.  The court found that neither party had consented to Plaintiff's excavating the ship. See id. at *5-6.  The court thus concluded that Plaintiff had failed to show he had "any right to excavate an abandoned shipwreck on someone else's property."  Id.

Further determining that Plaintiff expressly intended to salvage the alleged shipwreck without authorization from the owner, a substantial threat of irreparable harm to the property existed, the threatened injury if an injunction were not granted outweighed the potential damage of granting said injunction, and a permanent injunction would not disserve the public interest, the court held that a permanent injunction against Plaintiff's entering the area at issue was appropriate.[8]  See id. at *7-8.  The court accordingly granted summary judgment in favor of O'Connor and the State of Texas, and permanently enjoined Plaintiff from entering onto the property at issue, as well as from "boring, digging, excavating, or otherwise disturbing the submerged lands underlying Melon Lake or from removing soil or other materials embedded within those submerged lands," unless he obtained permission to do so by the owner of the property.  Id. at *11.  The court's ruling was

---

[8]   The court denied Plaintiff's motion to stay the court's ruling on the summary judgment motion because Plaintiff did not establish that further discovery would likely result in a genuine issue of material fact.  See O'Connor, 2010 WL 4366914, at *9.

affirmed by the Fifth Circuit.   O'Connor v. Smith, 427 Fed. App'x
359 (5th Cir. 2011).

**C.   Current Action**

Plaintiff, proceeding pro se, filed this lawsuit against the
Defendants and several other defendants on August 24, 2011, in the
Central  District  of  California,  alleging  numerous  causes  of
action.[9]  Defendants filed a counterclaim for breach of contract on
December 5, 2011.[10]   The case was transferred to this court on
February 16, 2012.[11]   On motions by the parties, the court
considered the merits of Plaintiff's numerous causes of actions
against the various defendants.[12]  The court issued a memorandum and
recommendation on October 26, 2012, dismissing all of Plaintiff's
claims against each of the defendants with the sole exception of
Plaintiff's  legal  malpractice  claim  against  Defendants.[13]
Specifically,  the  court  determined  that  the  convoluted  claims
against Defendants contained in Plaintiff's original complaint

---

[9]      See Doc. 1, Pl.'s Orig. Compl.

[10]      See Doc. 42, Defs.' Answer and Counterclaim.

[11]      See Doc. 98, Case Transfer; see also Doc. 96, Or. From C.D. Cal.
Granting Transfer of Venue; Doc. 97, Or. From C.D. Cal. Granting Transfer of
Venue.

[12]      See Doc. 109, Def. WKC's Mot. to Dismiss; Doc. 132, Defs. O'Connor
& WKC's Mot. for Summ. J.; Doc. 138, Def. State Counsel's Mot. to Dismiss; Doc.
177, Pl.'s Mot. for Partial Summ. J. Against Defs. O'Connor, WKC, & State's
Counsel; Doc. 180, Pl.'s Mot. for Partial Summ. J. Against Defs. O'Connor & WKC.

[13]      See generally Doc. 198, Mem. & Recommendation Dated Oct. 26, 2012.

arguably raised claim of legal malpractice.[14]  The memorandum and recommendation was adopted on November 16, 2012.[15]

Pursuant to the court's memorandum and recommendation, Plaintiff was given leave to file an amended complaint repleading his claim of legal malpractice against Defendants.[16]  On November 30, 2012, Plaintiff filed an amended complaint elaborating, at length, on the alleged facts giving rise to his legal malpractice claim.[17]  Two weeks later, on December 14, 2012, Defendants filed a motion to dismiss Plaintiff's amended complaint.[18]  The court issued a memorandum and recommendation on February 6, 2013, denying Defendants' motion.[19]

The court found that although Plaintiff's complaint was repetitive and rife with conclusory and unsubstantiated allegations, it also included allegations that the Defendants: (1) coerced Plaintiff to retain the Defendants' legal services;[20] (2) improperly billed Plaintiff after the parties entered into a

---

[14]   See id. p. 30.

[15]   See Doc. 201, Or. Dated Nov. 16, 2012.

[16]   See Doc. 198, Mem. & Recommendation Dated Oct. 26, 2012, p. 30.

[17]   See Doc. 203, Pl.'s 2nd Am. Compl.; see also Doc. 206, Defs.' Ans. to Pl.'s 2nd Am. Compl.

[18]   See Doc. 205, Defs.' Mot. to Dismiss.

[19]   See Doc. 229, Mem. & Recommendation Dated Feb. 6, 2013.

[20]   See Doc. 203, Pl.'s 2nd Am. Compl., ¶¶ 8, 110.

contingency agreement;[21] (3) failed to form a corporation on Plaintiff's behalf;[22] (4) accepted service of process on Plaintiff's behalf and represented Plaintiff with regards to litigation in 2010 without obtaining Plaintiff's consent or agreement;[23] and (5) engaged in a deficient legal strategy in their representation of Plaintiff.[24]   The court concluded that to the extent that these claims fell within the applicable statute of limitations, Plaintiff had alleged sufficient facts to support a claim for legal malpractice.[25]   The memorandum and recommendation was adopted on February 22, 2013.[26]

On May 3, 2013, Defendants filed a motion for summary judgment.[27]   Plaintiff responded on May 21, 2013, and Defendants filed a reply on June 10, 2013.[28] On June 10, 2013, Plaintiff filed a motion to strike the summary judgment evidence submitted by Defendants, and Defendants responded on June 25, 2013.[29] On June

---

[21]   See id. ¶¶ 69–71, 102.

[22]   See id. ¶¶ 9–14, 86.

[23]   See id. ¶¶ 38–41, 43, 95, 126.

[24]   See id. ¶¶ 44–58, 66, 80, 85, 91, 124.

[25]   See Doc. 229, Mem. & Recommendation Dated Feb. 6, 2013, p. 5.

[26]   See Doc. 230, Or. Dated Feb. 22, 2012.

[27]   See Doc. 243, Defs.' Mot. for Summ. J.

[28]   See Doc. 246, Pl.'s Resp. to Defs.' Mot. for Summ. J; Doc. 250, Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J.

[29]   See Doc. 248, Pl.'s Mot. to Strike; Doc. 253, Defs.' Resp. to Pl.'s Mot. to Strike.

21, 2013, Plaintiff filed a motion for partial summary judgment.[30]
Defendants responded on July 12, 2013, and Plaintiff filed a reply
on July 15, 2013.[31]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986);
<u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir.
2003).  A material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  <u>Anderson
v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet
Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at
250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th
Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits

---

[30]    <u>See</u> Doc. 252, Pl.'s Mot. for Summ. J.

[31]    <u>See</u> Doc. 261, Defs.' Resp. to Pl.'s Mot. for Summ. J; Doc. 262, Pl.'s
Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J.

that demonstrate the absence of genuine factual issues.  <u>Celotex</u> <u>Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co.</u> <u>v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore</u> <u>v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R</u> <u>Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not

carry this burden.  <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.

### III.  Analysis

Defendants move for summary judgment on the grounds that Plaintiff has not provided legally sufficient evidence to establish the elements of a legal malpractice claim and that any of Plaintiff's claims based on acts that allegedly occurred more than two years before he filed suit are barred by the statute of limitations.  Plaintiff contends in his response and motion for summary judgment that he has established the elements of his claim and that the discovery rule tolled the statute of limitations on his claims such that none should be barred.

### A.   **Evidentiary Issues**

Included in Plaintiff's summary judgment evidence are his own declaration, that of his business associate, Kathryn Brown ("Brown"), and copies of emails.  Defendants object to the court's consideration of these declarations and certain emails as competent summary judgment evidence.  Plaintiff makes no response to Defendants' arguments

Defendants argue that Plaintiff and Brown lack personal knowledge of the matters contained in their declarations and asks that they be stricken in their entirety.  In order to serve as competent summary judgment evidence, a declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Although the declarations contain legal conclusions and contentions based on conjecture, they also contain assertions clearly based on the personal knowledge of the declarants.  Therefore, while the court has not considered any improper summary judgment evidence included in the Plaintiff or Brown declarations, the court declines to strike them in their entirety.

Defendants contend that certain emails included as summary judgment evidence are hearsay not subject to any exception.  See Fed. R. Evid. 802.  "Evidence inadmissible at trial cannot be used to avoid summary judgment."  Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).  The emails reflect communications between Schwartz and third parties that Plaintiff alleges demonstrate that Defendants had agreed to form a corporation on behalf of Plaintiff.  The emails do not contain assertions offered to prove the truth of the matter asserted.  See Fed. R. Evid. 801(a), (c).  Rather, they contain inquiries, such as "Is this project still alive?" and "Do you have someone you could

recommend?" and a recommendation made to Schwartz regarding a transactional attorney.[32] Accordingly, the court declines to strike the emails as inadmissible hearsay.

Plaintiff likewise objects to the court's consideration of summary judgment evidence introduced by Defendants. Plaintiff argues in general terms that the entirety of Defendants' summary judgment evidence is irrelevant, that certain documents introduced as evidence have not been properly authenticated and therefore do not qualify for the business record exception to the hearsay rule, that emails sent by Plaintiff included as evidence are protected by the attorney-client privilege, and that Schwartz's affidavit contains improper conclusory allegations.

The court finds that Defendants' summary judgment evidence is relevant, that Schwartz's affidavit properly sets out facts on the basis of personal knowledge and lays the proper predicate for the business record exception to the hearsay rule, and that Plaintiff has waived the attorney-client privilege by litigating a claim against Defendants for malpractice. See Joseph v. State, 3 S.W.3d 627, 637 (Tex. App.-Houston [14th Dist.] 1999, no pet.) ("It is well settled that a client waives the attorney-client privilege when litigating a claim against his attorney for a breach of legal duty.") Accordingly, Plaintiff's motion to strike is denied.

---

[32] See Doc. 252-4, Ex. D to Pl.'s Mot. for Summ. J., Schwartz email dated Jan. 20, 2010; Doc. 252-6, Ex. F to Pl.'s Mot. for Summ. J., Schwartz emails dated Dec. 6-7, 2009.

**B.   Malpractice Claim**

To recover on a claim of legal malpractice, a plaintiff must prove that: "(1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." Belt v. Oppenheimer, Blend, Harrison & Tate, Inc., 192 S.W.3d 780, 783 (Tex. 2006) (quoting Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995)) (quotation marks omitted).

"A client claiming negligence on the part of his attorney has the burden of proving that damages resulted." Fireman's Fund Am. Ins. Co. v. Patterson & Lamberty, Inc., 528 S.W.2d 67 (Tex. Civ. App.-Tyler 1975, writ ref'd n.r.e.).   A party cannot recover damages that are based on speculation or conjecture. Swank v. Cunningham, 258 S.W.3d 647, 667 (Tex. App.-Eastland 2008, pet. denied).  "Uncertainty as to the fact of legal damages is fatal to recovery." McKnight v. Hill & Hill Exterminators, Inc., 689 S.W.2d 206, 207 (Tex. 1997).   Thus, "if damages are too remote, too uncertain, or purely conjectural, they cannot be recovered." Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997).   Summary judgment is appropriate when damages are based only on speculation. Reardon v. LightPath Techs., Inc., 183 S.W.3d 429, 439-442 (Tex. App.-Houston [14th Dist.] 2005, pet. denied).

Plaintiff seeks to recover damages for losses resulting from

14

his being denied access to the alleged shipwreck and losing business opportunities related to the shipwreck and future treasure hunting ventures.[33]   Plaintiff asserts that Defendants' alleged malpractice caused the permanent injunction to be issued, preventing him from salvaging the vessel.[34]   Plaintiff claims that he and Defendants, with "the aid of expert opinions," had concluded that the value of the contents of the vessel and related business opportunities was three billion dollars.[35]   Plaintiff further claims that the estimated future value of the treasure hunting corporation that he alleges Defendants neglected to form after agreeing to do so "would have been in the billions of dollars from the recovery of numerous treasures."[36]

These alleged damages are purely speculative.   The only

---

[33]   See Doc. 203, Pl.'s 2nd Am. Compl ¶¶ 33-37.   Plaintiff also seeks damages for Defendants allegedly billing him for attorneys' fees in contravention of the contingency fee agreement.   See Id. ¶ 71.   Plaintiff bases this claim on Defendants having sent Plaintiff his file with a cover sheet indicating the total amount of fees incurred.   The file was sent three weeks after Plaintiff filed this suit.   See Doc. 243-3, Ex. 8 to Defs.' Mot. for Summ J., Pl.'s File p. 2. According to Defendants, it was sent per Plaintiff's demand and was not intended to be a bill.   See Doc. 243, Defs.' Mot. for Summ. J. p. 28.   While the cover sheet used the language "Balance Due" in reference to the total fees, Plaintiff has introduced no evidence that Defendants otherwise indicated that they intended to bill Plaintiff for this amount, attempted to collect on this amount, or received any payment from Plaintiff.   See Doc. 243-3, Ex. 8 to Defs.' Mot. for Summ J., Pl.'s File p. 2.   The court finds this evidence insufficient to support Plaintiff's claim that he suffered damages from being improperly billed by Defendants.
Additionally, Plaintiff also seeks punitive damages.   See Doc. 203, Pl.'s 2nd Am. Compl ¶ 100.   The court will address as a threshold matter Plaintiff's claim of actual damages, as such damages "must be proven before punitive damages are available."   Twin City Fire Ins. Co v. Davis, 904 S.W.2d 663, 665 (1995).

[34]   See id. ¶ 37.

[35]   See id. ¶ 8.

[36]   See id. ¶ 12.

evidence of the ship that Plaintiff offered at trial in the 2007 case was his own testimony and a photocopy of a photograph of a small object that he claimed was a piece of wood from the alleged ship. Smith, 610 F. Supp. 2d at 755. The court concluded that this evidence was "insufficient to establish that the alleged vessel or any part of it . . . exists at all or, if it does, that it lies in the location at which [Plaintiff] claims." Id.

In affirming the judgment of the district court in the 2010 case, the Fifth Circuit considered Plaintiff's argument that the damages that would be caused to him by an injunction outweighed any injury to the plaintiffs resulting from his efforts to excavate the ship. In support of his claim for damages, Plaintiff relied only on his lawyer's assertions before the district court that Plaintiff was seeking investors for the purpose of salvaging the ship. O'Connor, 427 Fed. App'x at 367. The court concluded that "[t]hese unsubstantiated assertions [were] not competent summary judgment evidence." Id.

Plaintiff has introduced no additional evidence before this court that he has suffered damages related to recovering the shipwreck. In predicating his claim of damages on the unproven existence of a sunken vessel, Plaintiff has "pile[d] speculation upon speculation," such that he has failed to raise a genuine issue of material fact as to these alleged damages. See Reardon, 183 S.W.3d at 439.

16

Plaintiff further claims that he has suffered damages through legal expenses incurred during the underlying lawsuits.  Under the parties' engagement agreement, Plaintiff was to be responsible for "expenses and services incurred in connection with [Defendants'] work."[37]  Plaintiff does not explicitly claim that he paid anything to Defendants, but asserts that Defendants' negligence caused these expenses to be incurred such that he may include them in his plea of damages.

Plaintiff relies on <u>Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.</u>, 299 S.W.3d 106, 122 (5th Cir. 2009), where the Supreme Court of Texas held that "a malpractice plaintiff may recover damages for attorney's fees paid in the underlying case to the extent the fees were proximately caused by the defendant attorney's negligence."  There, the plaintiff sued its attorneys for failing to request certain jury instructions in the underlying trial.  <u>Akin Gump</u>, 299 S.W.3d at 111.  The court found that the plaintiff could recoup fees and expenses of counsel retained post-trial to argue to the trial court that the plaintiff had not waived certain claims by failing to request the jury instructions.  <u>Id.</u> at 123.

Defendants respond that, although Defendants billed Plaintiff for these expenses and seek to recoup them in their counterclaim,

---

[37]   <u>See</u> Doc. 243-5, Ex. 34 to Defs.' Mot. for Summ. J., Engagement Agreement p. 2.

Plaintiff has introduced no evidence that he has paid them anything. Defendants further contend that a fact issue does not exist as to whether these expenses were proximately caused by Defendants' negligence. The court agrees.

Plaintiff has introduced no evidence that he has paid Defendants for any of these expenses. Moreover, even if Plaintiff were to have paid for them, no genuine dispute exists regarding whether any expenses were incurred as a result of Defendants' malpractice.

Plaintiff contends that Defendants accepted service on his behalf in the 2010 case without receiving his consent, causing costs to be incurred.[38] Plaintiff asserted in his Second Amended Complaint that Defendants "fail[ed] to notify . . . Plaintiff that they would be accepting a second lawsuit on Plaintiff's behalf from the O'Connor family and they failed to notify . . . Plaintiff that they were making an appearance in Court as Plaintiff's counsel in regards to [this] lawsuit."[39]

Plaintiff's claim is squarely contradicted by the summary judgment evidence. On March 10, 2010, Schwartz received an email from O'Connor's attorney Ron Walker ("Walker") asking, "If you are

---

[38]    See Doc. 276, Pl.'s Brief in Support of Pl.'s Opp'n to Defs.' Mot. for Summ. J. p. 4.

[39]    Doc. 203, Pl.'s 2nd Am. Compl. ¶ 41.

still representing [Plaintiff] will you [accept] service?"[40]  Copies of the petition and temporary restraining order were attached to the email.[41]  That day Schwartz responded that he "[would] talk to Nathan."[42]  Schwartz then forwarded Walker's email to Plaintiff and stated that he "recommend[ed] [they] remove to Federal Court in Corpus and then move to transfer to [H]ouston before Judge Hittner."[43]  Schwartz asked if Plaintiff agreed.[44]  Plaintiff responded on the same day, stating, "That sounds good. Let's get it heard by the Hon. Judge Hittner."[45]

Plaintiff does not attempt to reconcile his claim with this evidence.  He simply states in his declaration that he "was never told that the Defendants would be making an appearance on his behalf in Federal Court."[46]  This evidence does not raise a material issue of fact regarding Plaintiff's claim that Defendants accepted service without his consent.

---

[40]    Doc. 243-2, Ex. 3 to Defs.' Mot. for Summ. J., Email from Walker to Schwartz Dated Mar. 10, 2010.

[41]    See id.

[42]    See Doc. 243-2, Ex. 4 to Defs.' Mot. for Summ. J., Email from Schwartz to Walker Dated Mar. 10, 2010.

[43]    See Doc. 243-2, Ex. 5 to Defs.' Mot. for Summ. J., Email from Schwartz to Pl. Dated Mar. 10, 2010.

[44]    Id.

[45]    See Doc. 261-2, Ex. 7 to Defs.' Mot. for Summ. J., Email from Pl. to Schwartz Dated Mar. 10, 2010.

[46]    Doc. 246-1, Ex. 1 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Pl.'s Declaration p. 14.

Plaintiff also contends that Defendants "led Plaintiff to believe" that the 2010 action was being litigated "in order to preserve Plaintiff's salvage rights" when, in fact, "it was only an action for trespass."[47]  Plaintiff appears to be alleging that had he better understood the nature of the 2010 action he would not have authorized Defendants to litigate it.[48]  The evidence, however, reveals that Plaintiff was kept well informed of the proceedings. He reviewed and commented on Defendants' pleadings before they were filed. For example, with respect to a response to a motion for summary judgment, he remarked "I have looked over the response.  It appears that you have hit your mark.  I am satisfied with the response."[49]  Plaintiff also reviewed a draft of an appellate brief, emailing Defendants, "Thanks for another amazing job.  Besides a couple of rewordings the Brief is perfect."[50]  Plaintiff does not attempt to reconcile this evidence with his vague claims that Defendants failed to inform Plaintiff as to the nature of the 2010 action.  Even if the court were to credit Plaintiff's argument that Defendants did not fully explain the legal process in the 2010 case, a lack of understanding on Plaintiff's part cannot form the

---

[47]    See Doc. 276, Pl.'s Brief in Support of Pl.'s Opp'n to Defs.' Mot. for Summ. J. p. 5.

[48]    See id.

[49]    See Doc. 243-5, Ex. 13 to Defs.' Mot. for Summ. J., Email from Pl. to Schwartz Dated Aug. 6, 2010.

[50]    See Doc. 243-5, Ex. 21 to Defs.' Mot. for Summ. J., Email from Pl. to Schwartz Dated Feb. 16, 2011.

basis of a claim for legal malpractice.

In sum, the evidence does not raise a fact issue regarding Plaintiff's claim that he incurred litigation expenses proximately caused by Defendants' negligence.  Because Plaintiff has failed to raise a genuine issue of material fact as to damages, the court recommends that Defendants' motion for summary judgment as to Plaintiff's malpractice claim be granted and Plaintiff's motion for summary judgment be denied.  The court need not reach Defendants' other arguments for summary judgment.

## C.   __Motion for continuance__

Plaintiff moves for relief under Federal Rule of Civil Procedure ("Rule") 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny or defer considering the motion or allow time for discovery.  Fed. R. Civ. P. 56(d).  Plaintiff contends that his case has been "severely prejudiced" because Plaintiff has "not been able to conduct discovery and [Defendants] have refused to participate in discovery."[51]

For a party to mandate relief under Rule 56(d), the party must show "both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence."  __Access Telecom, Inc. v. MCI__

---

[51]   __See__ Doc. 246, Pl.'s Resp. to Defs.' Mot. for Summ. J p. 2.

<u>Telecomm. Corp.</u>, 197 F.3d 694, 719 (5th Cir. 1999).

Plaintiff has failed to demonstrate that any discovery would aid in his opposition.  The court finds that Plaintiff has failed to raise a genuine issue of material fact that he suffered damages because his claim that he would have profited from discovering treasure is fatally speculative and his claim that he incurred legal expenses proximately caused by Defendant's negligence is unsupported by allegations that make out a claim for malpractice. Plaintiff has not explained how, with additional discovery, he could overcome his pleading deficiencies.  Accordingly, the court finds that Plaintiff is not entitled to relief under Rule 56(d).

**D.**   **<u>Defendants' counterclaim</u>**

In their counterclaim for breach of contract, Defendants asserted that Plaintiff owes them $43,817.44 in litigation expenses and costs.[52]  The elements of a breach of contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by defendant, and (4) damages sustained by the plaintiff as a result of the breach.  <u>Frost Nat'l Bank v. Burge</u>, 29 S.W.3d 580, 593 (Tex. App-Houston [14th Dist.] 2000, no pet.)

Defendants introduced a signed engagement letter under which Plaintiff agreed to be responsible for "expenses and services incurred in connection with our work, such as photocopying,

---

[52]    <u>See</u> Doc. 42, Defs.' Answer and Counterclaim p. 23.

delivery charges, travel expenses, long-distance telephone calls, facsimile transmissions, and specialized computer applications such as computerized legal research and filing fees."[53]   Defendants further introduced evidence that they billed Plaintiff monthly for these fees and that Plaintiff did not pay for any of the expenses.[54] Their claim is supported by Schwartz's affidavit, in which he attested that systematic records had been kept and that Plaintiff had not paid for any of the incurred litigation expenses.[55]

Plaintiff did not contest this evidence in his declaration, other than to assert that Defendants' claim must fail because of their alleged acts of malpractice.[56]   Because no genuine issue of fact exists as to Defendants' entitlement to these expenses, the court recommends that Defendants motion for summary judgment as to their claim for $43,817.44 be granted.

Defendants also seek an award of "$978,947.80 if an when [Plaintiff] receives monies from film or movie rights."[57] Defendants cite to a provision in the engagement letter stating:

should there be no recovery in the Lawsuit by way of a

---

[53]   Doc. 243-5, Ex. 34 to Defs.' Mot. for Summ. J., Engagement Letter p. 2.

[54]   See Doc. 243-6, Ex. 35 to Defs.' Mot. for Summ. J., Billing Record; Doc. 243-1, Defs.' Mot. for Summ. J., Schwartz's Affidavit.

[55]   See Doc. 243-1, Defs.' Mot. for Summ. J., Schwartz's Affidavit p. 2.

[56]   See Doc. 246-1, Pl.'s Statement of Genuine Issues in Opp'n to Defs.' Mot. for Summ. J., Declaration of Pl.

[57]   See Doc. 243, Defs.' Mot. for Summ. J. p. 31.

salvage award or judgment or settlement, but [Plaintiff] receive[s] movie or film rights, then [Plaintiff] agree[s], to the extent [Plaintiff] or any affiliated company or partnership receive money, [Plaintiff] will pay [Defendants] its standard hourly rate plus 50% for all time spent on The Matter.

Defendants fail to satisfy the "threshold requirement imposed by Art. III of the Constitution that those who seek to invoke the power of federal courts must allege an actual case or controversy." O'Shea v. Littleton, 414 U.S. 488, 493 (1974). A federal court's jurisdiction can be invoked only when the plaintiff has alleged "some threatened or actual injury resulting from the putatively illegal action." Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973). "Abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury." O'Shea v. Littleton, 414 U.S. at 494.

Defendants have not asserted that Plaintiff has received film rights related to the matter and, therefore, have failed to identify any injury related to this provision of the contract. Accordingly, the Court recommends that Defendant's motion for summary judgment as to their counterclaim for contingent damages and/or declaratory relief stemming from this film-rights provision be denied.

## IV. Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion to Strike and **RECOMMENDS** that Defendants' motion be **GRANTED IN PART,**

**DENIED IN PART** and Plaintiff's Partial Motion for Summary Judgment be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>27th</u> day of January, 2014.

Nancy K. Johnson
United States Magistrate Judge